Michael Tanaka, appearing on behalf of Appellant. I guess this is Batson Day. Batson is a very important case in our courts because our courts don't tolerate racial discrimination, and it's particularly pernicious in jury selection because it has the potential of violating not only the rights of the defendant, but also has the potential of offending the dignity of the juror who's been stricken because of racial discrimination. And for that reason, Batson establishes a relatively low threshold to require the trial court to look at and look into whether or not that challenge has been exercised in a discriminatory manner. Kagan. Counsel, if we were to agree with you that there was a prime definition case established, what would be the next step in the analysis? What should we do, in your view? Michael Tanaka, appearing on behalf of Appellant. Well, the next step generally is the prosecutor is required to establish or give a racial neutral explanation. Kagan. That wasn't done in this case. Well, the court wouldn't let the prosecutor either, right? The court said, no, you're not, you know. I don't want to hear from you. So what do we do? Jurisprudence generally in these cases is to remand for an evidentiary hearing, at which point the prosecutor has the opportunity to do that, to reconstruct the record, so to speak. But didn't they already say here they can't remember or, I mean. In this case, there was an evidentiary hearing scheduled, and the State presented the declaration of the trial prosecutor who said, no, I can't remember. I submit in that case, then, we cannot even get to Step 3, in which case that requires the writ be granted. There are plenty of. Well, let me ask you this, though. In this situation here, on the prima facie case, obviously you have three stricken, correct? Three African-American stricken. Yes. That's correct. But prior to that, the prosecutor had passed the jury several times and was willing to, and in that, there were African-Americans that were sitting on there, right? That's correct, Your Honor. And some of them were the same ones, right? That's correct, Your Honor. Well, so if, you know, what I see here is you've got numbers, and striking three is a lot. What more do you have? And do you have to show more when it was shown that the prosecutor was willing to accept those individuals at one point? And then, obviously, other jurors came on, and I think that we all know that at that point, both lawyers have an opportunity to re-look at the Constitution of their panel and decide, you know, how they think that would all work together. Shouldn't you just have to show more than numbers here? I don't believe so, Your Honor. One, the numbers are so compelling. Not only did the prosecutor remove three of the four blacks from the panel, but at that point, and the numbers didn't change significantly. So he passed those people first, and then one person sat on the panel, right, later? Yes. Okay. The other point about that is that this was a case where there were two defendants. Each side had 30 strikes total. So the prosecutor, I'm sure, knew, as a strategic matter, that he could pass his first couple rounds and still not. But you don't know that. I mean, when you pass, you have to be prepared that everyone else is going to pass, too. I mean, and it happens. I mean, when you pass, you. It's a gamble. But, again, we're just looking at the total facts and circumstances, and I submit that. So you say that means nothing? It means something, but not very much. I suspect that that had more to do with a strategic plan the prosecutor had in exercising those challenges. I think this is an experienced prosecutor. This prosecutor knows that when both sides have 30 challenges, it's unlikely anyone's going to accept the jury after one or two rounds. And I guess that's a gamble I'm willing to take. But once he started exercising challenges, he very quickly struck three black jurors. Counsel, in this case, since the whole question surrounds the prima facie case, is this one that we ought to hold off until we hear from the Supreme Court on Johnson? That might be prudent, though, even under the position advocated by the State in Johnson. I think there's no question the prima facie case has been established. I think the State's position in Johnson is that a prima facie case is established whenever the unexplained strikes make it more likely than not that they're the product of race discrimination. And here's the pattern. The numbers are so compelling that, by themselves, they raise that inference. And in that respect, this case is indistinguishable from this Court's recent decision in Paulino. I think the only difference, the only salient difference there is that, in that case, the prosecutor used 83 percent of their strikes against black jurors. Well, in Paulino, did they pass the jury with blacks on it first? No. Passed those two. All right. And did any blacks end up sitting on the jury? One did. So it's three out of four and five out of six. But that's not a meaningful difference in this context, I would submit. As I see it, Judge Wilson really didn't squarely hit the merits of the whole thing, but, in effect, said that the defendant didn't make a sufficient record. And in a sense, that is true. That leads us, I guess, to who has the burden of laying this out. As much as we know is that there were four prospective black jurors, and three of them were challenged by the State. Does that mean that we know about all of the others, or what do we know about the others? Or is that as much as we know? We know a little bit more than Judge Wilson says we know. But we know enough to know that there's a prima facie case. We know that, yeah, there were four black jurors and three of them were stricken. We know the prosecutor used four challenges and three of them on blacks at the time of the challenge. Now, we don't know the race of the 22 jurors who hadn't even called or questioned at that point, but that's almost irrelevant in this case. It would be more relevant, I suppose, if we were going to have an evidentiary hearing and look into the pretext. So it's your position, of course, that enough is known here without putting any further burden on the defendant to put into the record all of the other things that might have been. Again, that's correct, Your Honor. And again, I rely on Paulino, which is all they knew on Paulino was that there were six black jurors, five of them were stricken, and the prosecutor used five of his six strikes, or five of her six strikes in that case against them. And each time a party exercises a preemptory challenge, they know precisely which juror is going to take the place within the 12, am I right? As long as there's five jurors, they can tell which ones are coming in next. Well, do we know that from this record, though? I mean, some people use the six-pack, you know, people use, but, you know, some people know the order, some people don't. I mean, there are judges that select juries that they put 12 in the box, and then the other people, that's all that they put, and then they call people at random. Yeah, I don't know the exact numbers in this case, Your Honor, but they did it by one large panel at first, and they questioned all of them. They were numbered. They first put the first 12 in, and then as they were excused, they came in sequentially. And that's in the record? That's in the record. You can tell that from the bar chart. I'd like to say as many times as we're going. You may do that. We'll hear from the State. Your Honor, as a record in this case, it clearly establishes that Petitioner failed to make a prima facie showing that the prosecutor utilized his peremptory challenges in an unconstitutional manner. Significantly, he never showed. Do you want to maybe say your name? My name is Stephanie Yoshi, Deputy Attorney General. Okay. Sorry. Thanks. Significantly, he never showed the number of African Americans on the jury veneer as a whole, and his attempts to make a prima facie case were largely contradicted by the actions of the prosecutor. As defense counsel even noted. So it is true that three of four blacks were stricken, correct? It is true that three of four African Americans who were in the jury box at that time were stricken. He never did. Okay. And after Paulino, is that sufficient to show a prima facie case? No, it's not. Even in Paulino, the court states that over 83 percent of the possible African Americans were included. I believe they looked at the entire jury veneer. And, in fact, in Williams v. Woodford, the court specifically stated that a prosecutor must do more than point to the number of African Americans stricken in order to show that a prima facie case has been established. A prosecutor must point to, or the defense? The defense, excuse me, must point to more than just the number of African Americans stricken to make a prima facie case. In general, this Court has looked at not only the number of people stricken, but the number of members of that class who were on the jury veneer as a whole, other factors such as the number of members of that class that made it onto the jury as finally constituted, and any other facts that might shed light on the issue. Counsel, would you agree or disagree that we should await the Supreme Court's decision in Johnson, which will deal specifically with how a prima facie Batson case is established? I guess arguably it might apply to this case. I mean, I think there would be an issue as to whether it might be T-barred or something of that nature. But on its surface, it does appear to apply. Certainly, the trial court in this case did not have the benefit of that case in rendering its decision. But it might be prudent. I think the Supreme Court- Just a little bit more. Now, we do know that only one African American was on this jury, do we not? Yes. And whoever might have been among those in the courtroom who were prospective jurors, if there were any who were black, they were challenged by somebody. Am I right? What we do know, based on the record, is that at the time the Wheeler motion was made, there was one African American seated within the jury box. We don't know about the racial makeup of those jurors who were seated outside the jury box. And I think at the time of the Wheeler motion, there were two jurors who were seated in the seats numbered 13 through 33. And in addition, there were 22 additional prospective jurors who were waiting outside the courtroom and who were subsequently called into the courtroom shortly after the Wheeler motion was denied. And does this record show the race of anybody who was challenged preemptorily by either defendants? No, it does not. And that was nine people that was challenged by the defense. What do you make of, you know, I asked Mr. Tanaka about this, the fact that these three jurors that were ultimately challenged were passed several times by the prosecutor. Does that have any significance from your perspective?  I think it clearly shows that the prosecutor then was not exercising his preemptory challenges for a racial reason. He accepted the jury containing juror number one, who was African American, a total of six times. And he accepted a jury containing two African Americans, a total of four times. And I think the number of times that he accepted the jury shows that he wasn't, he didn't have some kind of racial animus or racial reason to dismiss the jurors. Now, let's say that the prosecutor had not passed over and, you know, had not passed and accepted those jurors. And if you just say the three out of four were challenged, would you concede that that would be a prima facie case? Would the statistics there alone have been enough in this case? No, because as I pointed out, this Court has always looked at additional factors, such as the number of African Americans on the jury veneer as a whole, and that has not been established in this particular case. Well, can sometimes numbers be enough? You mean in terms of the number of African Americans stricken? Yes. This Court has seemed to indicate otherwise in its published cases. Even after Paulino or Paulino, however it's pronounced, you would say that statistics can't be compelling enough? Statistics can be compelling. I think it's, one has to differentiate between statistics and sufficient statistics. And this Court has said, as I said in Williams v. Woodford, it's not enough just to point to the number of people stricken. And even in Paulino, as I pointed out, they state that 83 percent of the African Americans who were available were stricken. So they did look at the number of people on the veneer, apparently, and not just the number of people that were stricken by the crime. So whose burden is that to bring all that forth? It should be the defense burden, because they are the moving party in the Wheeler motion. They have the burden to establish a prima facie case. And in addition, on habeas, once again, they have the burden to show that they are entitled to the relief that they seek. Now, if we attach some significance to the fact that the prosecutor accepted the jury at one point, if I'm getting the picture correctly, under California procedure, a prosecutor can accept the jury by not challenging when it comes, the state's turn, and then presumably if the defendant were to say, I'm satisfied, that would be the end of it. Correct. But once the defendant says, I'm not satisfied by exercising an additional peremptory, then that opens the whole arena again for the state. Is that the idea? Right. And that then, it doesn't matter whether the state is challenging a juror that is, that it takes the place of another as a result of a defendant's challenge or just goes at large to the jury again. Right? Right. And then what happens if the state exercises the number of challenges it's allowed in its turn and then the defendant waives, accepts the jury? Does the state get to keep right on going? If he's run out of it. Until they run out? Yes. Could the state save all of its challenges until it was reasonably certain that the defendant was just about done and then use all of its challenges after the defendant had been almost finished or in the view of the state almost finished and then say, now I'm going to really use these and he has no weapon against who I get on there? Is that the way it works? I suppose he could. That's not what happened in this case. Well, I know. But if we say that waiver is significant, then we open it to that scenario, do we not? Well, I'm not sure that you do. I mean, in this particular case, he accepted it, which meant that had the defense accepted it, he wouldn't be here. Well, he accepted it because I think that advocates would like to have all of their challenges last just as soon as the other side ran out. Right? Sure. Right. And if we say waiver is significant, then it's reason for that tactic to be employed, is it not? Not necessarily. I mean, in this particular case, he accepted the jury numerous times, which meant that the defense had numerous opportunities to accept it as well. Yeah. And they chose instead to continue to exercise their peremptory challenges. But clearly, the prosecutor was satisfied at a number of points with the jury as it was constituted, including African-Americans. Well, I think my point is he's satisfied as long as he thinks the defendant will exercise one more. Well, but how would he know that the defendant is going to exercise one more? He might have somebody else. You understand what I mean, do you not? I do understand what you mean. But, I mean, it's a risk any time you accept a jury that, you know, the other side is going to accept it too, and you're going to end up with the jury as it's constituted then. And there's nothing certainly to show that here the prosecutor was, you know, somehow saving all his challenges until the defense ran out. In fact, the defense did not run out of challenges. You know, there are places where if a party waives the challenge, that's it. As to those seated, they're finished. And you can only challenge as to a new one. There are places where it's that way, and that's okay. But in this case, I think that it's clear because the Petitioner did not at all establish the number of African Americans in this case, and significantly the prosecutor accepted the jury so many times with African Americans that a prima facie case was not established here, and unless the Court has any additional questions. I don't believe we do. Thank you. Mr. Tanaka, you have some rebuttal time remaining. Thank you. Again, this case controlled by Paulina, the State just talked about numbers. But the only numbers we need are the numbers of challenges the prosecutor used against blacks and the percentage of those challenges, of the prosecutor's challenges. That's all that was shown in Paulina. There was no showing in Paulina about the number of blacks on this entire veneer. All we know are the ones that were in the box subject to challenge, the same numbers we know in this case. She talked about Williams, that numbers are not enough there. Well, in Williams, the prosecutor used only 2 out of 19 challenges to strike minority jurors. Here it's 3 out of 4. Numbers are significant. And then finally, I mentioned that the prosecutor accepted the juror with all 3 of these. I think that was stated. I don't know whether it was Judge Callahan that stated that the prosecutor accepted the jury with all 3 of the blacks who were ultimately challenged. And that's minor factually inaccuracy in that at no point was the last juror accepted by the prosecutor. The prosecutor, once he started exercising challenges, exercised 3 in a row against black jurors. And the last one, he exercised that juror had never been accepted by that prosecutor. Thank you, counsel. The case just argued is submitted. And we will turn finally to Josephs v. Pacific Bill.
judges: Leavy, Graber, Callahan